**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**NATIONWIDE LIFE AND ANNUITY
INSURANCE COMPANY,**

   **Plaintiff,**

 **vs.**         **Civil Action 2:12-cv-213
            Judge Smith
            Magistrate Judge King**

**EDMOND GOLDEN, et al.,**

   **Defendants.**

**ORDER AND
REPORT AND RECOMMENDATION**

   This is a diversity action, 28 U.S.C. § 1332, in which plaintiff Nationwide Life and Annuity Insurance Company ("plaintiff" or "Nationwide") seeks a declaratory judgment and other relief, alleging that a life insurance policy issued by it on the life of Edward Barry is void *ab initio* because it was procured by a stranger-originated life insurance ("STOLI") scheme without an insurable interest. This matter is before the Court for consideration of the motion to dismiss filed on behalf of defendants Edmond Golden, FJ Smith, Inc., and Jeff Railey, Doc. No. 13, and on defendant Leonard Aguiar's motion to dismiss, Doc. No. 14. The motions ask that this action be dismissed pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, defendants seek to transfer this action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). The motions to dismiss are ripe for consideration. Also before the

Court are defendants' requests for the Court to take judicial notice of certain facts.  Doc. Nos. 12, 27.  Defendants' requests for the Court to take judicial notice, Doc. Nos. 12, 27, are **GRANTED** as unopposed.  For the reasons that follow, it is **RECOMMENDED** that this action be transferred, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), to the United States District Court for the Southern District of California.

## I.   Background

This is an action for fraud, breach of contract, negligent misrepresentation, civil conspiracy, violation of the Ohio Viatical Settlements Act, R.C. § 3916.01 *et seq.*, and declaratory judgment pursuant to 28 U.S.C. § 2201, in connection with an alleged fraudulent STOLI scheme to procure a $4.5 million life insurance policy (the "Policy") on the life of Edward Barry ("Barry").  The *Complaint*, Doc. No. 2, alleges the following:

Plaintiff is a life insurance company organized and existing under the laws of the State of Ohio, with its principal place of business in Ohio.  *Id*. at ¶ 2.  Defendant Leonard Filizzola Aguiar ("Aguiar") is a citizen of the State of Texas; defendants Edmond Golden ("Golden") and Jeff Railey ("Railey") are citizens of the State of California; and defendant FJ Smith, Inc. ("FJ Smith"), is a corporation organized under the laws of the State of California.  *Id*. at ¶¶ 3-6.

On February 4, 2009, Aguiar, plaintiff, and the Legacy Network, LLC, executed a Producer & Commission Assignment Agreement (the "Agreement").  *Id*. at ¶ 19; Doc. No. 2-1.  The Agreement, which is

expressly governed by Ohio law, permitted Aguiar to solicit applications for life insurance policies on behalf of plaintiff. *Complaint*, at ¶¶ 19-20.

In April 2009, Aguiar, Golden, Railey, and FJ Smith (the "Moving Defendants") and other unknown parties identified as Does 1-20 developed a STOLI scheme to procure a $4.5 million life insurance policy on Barry and to sell the policy on the secondary market. *Id.* at ¶¶ 24, 27. In October 2008, the Edward Barry Insurance Trust (the "Trust") was created with Barry as the settlor and Golden as the trustee. *Id.* at ¶ 26.

On April 8, 2009, Aguiar submitted an application for life insurance to plaintiff's Ohio office. *Id.* at ¶ 27. The application was signed by Barry as the insured, Aguiar as the insurance producer, and Golden as the owner. *Id.* at ¶ 28. Aguiar also completed a producer's certification, "which was submitted to Nationwide in Ohio wherein it was represented Barry's net worth was $14,650,000.00 with $804,000.00 in annual income." *Id.* at ¶ 29. On that same day, Barry and Golden signed and submitted to plaintiff's Ohio office a Life Financial Supplement, providing a similar representation of Barry's net worth and income. *Id.* at ¶ 30. Plaintiff alleges that certain information contained in the application, producer's certification and Life Financial Supplement knowingly contained false information. *Id.* at ¶¶ 31-42, 91.

Once these documents were completed, Barry, Aguiar and Railey "corresponded with Nationwide's underwriters and agents in" Ohio "to

provide the remaining documents necessary" to the issuance of the Policy. *Id.* at ¶ 43

On June 10, 2009, Railey, a certified public accountant, "verified Barry's income and net worth as listed on the Financial Supplement." *Id.* at ¶¶ 6, 46. On June 17 and 19, 2009, Aguiar "submitted Life Insurance Illustrations" to plaintiff's Ohio office. *Id.* at ¶ 47.

Plaintiff issued the Policy on June 22, 2009. *Id.* at ¶ 48. On July 20, 2009, Barry, Golden and Aguiar signed an Amendment to the Policy and Golden and Aguiar signed a Receipt of Policy. *Id.* at ¶ 49. These documents were "received by" plaintiff in Ohio. *Id.* at ¶ 50.

On July 24 and 27 and August 12, 2009, Golden submitted premium payments "via wire" to plaintiff in Ohio on behalf of the Trust. *Id.* at ¶¶ 51-53.

"Following the issuance of the Policy, Aguiar corresponded with Nationwide's Columbus, Ohio office and received Policy Summaries, Annual Statements and Statements of Coverage from that office." *Id.* at ¶ 55.

On June 24, 2011, Golden and Jeff Keller signed an Application for Designation of Owner, transferring ownership of the Policy from Golden to Keller, as President of FJ Smith. *Id.* at ¶ 56. Golden and Jeff Keller also signed an Application of Change of Beneficiary Designation, designating FJ Smith as the primary beneficiary of the Policy. *Id.* at ¶ 56. On September 12 and December 5, 2011, FJ Smith submitted premium checks to plaintiff's Ohio office. *Id.* at ¶ 58.

Barry died on October 20, 2011.  *Id.* at ¶ 59.  FJ Smith submitted a claim to plaintiff's Ohio office on December 26, 2011.  *Id.* at ¶ 60.

Plaintiff alleges that the Policy was obtained pursuant to an agreement that it would be transferred to a STOLI investor with no insurable interest in Barry's life.  *Id.* at ¶ 70.  It is further alleged that the Trust was created to facilitate the scheme, that payments were allegedly financed by a person without an insurable interest, and that plaintiff would not have issued the Policy but for false statements made by Barry, Golden, Railey, and Aguiar.  *Id.* at ¶¶ 26, 54, 79-89, 91.

Aguiar has submitted a declaration ("*Aguiar Declaration*"), Doc. No. 15-1, that asserts the following:

Aguiar was a resident of the State of California during the time that the actions alleged in the *Complaint* took place.  *Aguiar Declaration*, ¶ 2.  Aguiar was recruited by Legacy, an Idaho company, as an independent contractor for plaintiff.  *Id.* at ¶¶ 3-4.  Aguiar obtained the Agreement from Legacy and returned it to Legacy after signing it.  *Id.*  Aguiar has never had any direct contact with plaintiff; all contacts relative to the Policy were with Legacy and Legacy communicated and forwarded documents to plaintiff.  *Id.*  Aguiar is not licensed to sell insurance in Ohio, has never sold a policy to an Ohio resident, has no offices, property, or bank accounts in Ohio, and has never travelled to Ohio.  *Id.* at ¶ 5.

The Policy, which is attached to the *Aguiar Declaration*, states that California is the state of issuance.  *Id.* at p. 6.  Aguiar also asserts that the Policy was issued in California.  *Id.* at ¶ 6.

Golden has submitted a declaration ("*Golden Declaration*"), Doc. No. 13-1, that provides that Golden is a citizen of the State of California, currently residing in Escondido, California. *Golden Declaration*, ¶ 2. Golden has never visited the State of Ohio, makes no purchases or sales in Ohio, owns no property in Ohio, has no bank account in Ohio, and conducts no business in, solicits no clients from, and holds no assets in Ohio. *Id.* at ¶ 4. Golden also avers that the Trust was created to facilitate the ownership of the Policy and that Barry's son, Paul Barry, was designated as the trust beneficiary until the Policy was transferred to FJ Smith. *Id.* at ¶¶ 5-7.

Railey has submitted a declaration ("*Railey Declaration*"), Doc. No. 13-2, that provides that Railey is a citizen of the State of California, who currently resides in San Diego, California. *Railey Declaration*, ¶ 2. Railey has never visited the State of Ohio, makes no purchases or sales in Ohio, and owns no property, has no bank account, conducts no business in, solicits no clients from, and holds no assets in Ohio. *Id.* at ¶ 4.

Jeff Keller, the CEO of FJ Smith, has submitted a declaration ("Keller *Declaration*"), Doc. No. 13-3, that provides that FJ Smith is a corporation organized under the laws of the State of California with its principal place of business in California. *Keller Declaration*, ¶ 2. Jeff Keller avers that FJ Smith is not licensed or registered to do business in Ohio, has never done business in Ohio, has never solicited clients or advertised in Ohio, and owns no property, has no bank account, does not regularly sell or purchase goods in, solicits

6

clients from, or has any assets in Ohio.  *Id.* at ¶ 4.  Furthermore, FJ
Smith does not maintain any offices, employees, agents, officers, or
directors in Ohio.  *Id.*

In their motions, the moving defendants contend that the Court
lacks personal jurisdiction over them, that the *Complaint* fails to
state a claim for relief against them and that the action was filed in
an improper venue.

## II.   Personal Jurisdiction

### A.   Standard

Federal Rule of Civil Procedure 12(b)(2) authorizes the filing of
a motion to dismiss for lack of personal jurisdiction over a
defendant.  In considering a properly supported motion to dismiss for
lack of personal jurisdiction, a district court is vested with the
discretion to decide the motion upon the affidavits alone, to permit
discovery in aid of deciding the motion, or to conduct an evidentiary
hearing to resolve any apparent factual question.  *Theunissen v.
Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First
Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  Here,
no party has requested additional discovery or an evidentiary hearing
and this Court concludes that neither is necessary to the resolution
of the issue of personal jurisdiction.

A plaintiff bears the burden of establishing personal
jurisdiction.  *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545
F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d
457, 462 (6th Cir. 2006)).  However, where a Rule 12(b)(2) motion is
decided solely on written submissions and affidavits, as here, "the

plaintiff's burden is relatively slight, and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id*. (quotations and citations omitted). Indeed, "[t]he pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the [] court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Id*. (quoting *Theunissen*, 935 F.2d at 1459). Nevertheless, the pleadings must set forth with reasonable particularity those specific facts that support jurisdiction. *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). *See also Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012) (holding that a court should draw only reasonable inferences from a plaintiff's pleadings in assessing personal jurisdiction).

**B.  Defendants Aguiar and Golden**

"A Federal district court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant." *Theunissen*, 935 F.2d at 1459 (citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). Constitutional concerns of due process, however, limit the application of this principle. *Id*. (citing *Welsh*, 631 F.2d at 439). The United States Court of Appeals for the Sixth Circuit has recognized that Ohio's long-arm statute does not extend to the constitutional limits of the Due Process Clause. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (quoting *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998)). "Accordingly, 'when Ohio's long-arm statute is the basis

for personal jurisdiction, the personal jurisdiction analysis requires separate discussions of whether the defendant is amenable to suit under Ohio's long-arm statute and whether due process requirements of the Constitution are met.'"   *Estate of Thomson*, 545 F.3d at 361 (quoting *Walker v. Concoby*, 79 F.Supp.2d 827, 831 (N.D. Ohio 1999)).

### 1.   Ohio's Long-Arm Statute

Defendants Aguiar and Golden are subject to personal jurisdiction under the Ohio long-arm statute, which provides in pertinent part as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> . . .
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]

R.C. § 2307.382(A)(6).  Courts in this district generally take a "broad approach" to application of § 2307.382(A)(6).  *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012) (quoting *Grigor v. Starmark Hospitality Group LLC*, No. 2:10-cv-20, 2010 WL 2403137, at *5 (S.D. Ohio June 10, 2010)).  Federal courts and Ohio state courts have determined that fraudulent communications or misrepresentations directed at Ohio residents satisfy the requirements of § 2307.382(A)(6).  *Id.* (citing *Grigor*, 2010 WL 2403137 at *5).  *See also Vlach v. Yaple*, 670 F.Supp.2d 644, 648 (N.D. Ohio 2009); *Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*, 943 F.Supp. 825, 829 (N.D. Ohio 1996); *Kauffman Racing Equip., L.L.C. v. Roberts*, 930

N.E.2d 784, 792 (Ohio 2010); *Herbruck v. LaJolla Capital*, No. 19586, 2000 WL 1420282, at *3 (Ohio App. Sept. 27, 2000)).

The *Complaint* alleges that, in applying for the Policy, Aguiar and Golden submitted documents to plaintiff in Ohio that knowingly contained false and material information, that these defendants intended plaintiff to rely on those documents, that plaintiff did in fact rely on those documents in issuing the Policy, and that plaintiff suffered damage as a consequence. *See Complaint*, ¶¶ 27, 29-42, 78-95. By allegedly knowingly sending false documents to Ohio in an application for life insurance, Aguiar and Golden should have reasonably expected that the Ohio recipient would have been injured in Ohio. *See Vlach*, 670 F.Supp.2d at 648. Accordingly, the exercise of jurisdiction over defendants Aguiar and Golden is proper under R.C. § 2307.382(A)(6).

### 2. Federal Due Process

In order to satisfy notions of federal due process, a court may exercise personal jurisdiction over a non-resident defendant only if the exercise of such jurisdiction arises from "certain minimum contacts with [the forum] such that [] maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The non-resident defendant must have conducted himself in such a manner that he could "reasonably anticipate being haled into court" in Ohio. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). This requirement is met if the defendant "purposefully directed his activities at residents of the

forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations and quotations omitted).

The United States Court of Appeals for the Sixth Circuit employs three criteria for determining whether the exercise of *in personam* jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). *See also Calphalon Corp.*, 228 F.3d at 721-22.

"'The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Schneider*, 669 F.3d at 701-02 (quoting *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010)). Purposeful availment may exist when a defendant sends communications into the forum that "form the bases for the action." *See id*. (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) ("We have held previously that purposeful availment may exist when a defendant makes telephone calls and sends facsimiles into the forum state and such communications 'form the bases for the action.'"). *See also Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) ("When the actual content of the communications into the forum

gives rise to an intentional tort action, that alone may constitute purposeful availment.")

In the case presently before the Court, defendants Aguiar and Golden allegedly submitted documents to plaintiff in Ohio that knowingly contained false and material information; they allegedly intended plaintiff to rely on those false documents and plaintiff allegedly did rely on those false documents in issuing its Policy, suffering damage as a result. *Complaint*, ¶¶ 27, 29-42, 78-95.  The action of sending false information into Ohio had foreseeable effects in Ohio and was directed to a business in Ohio with the intent that the business issue a life insurance policy.  These allegedly false representations were not merely incidental communications sent to Ohio; they form the heart of the claims of fraud and negligent misrepresentation against Aguiar and Golden.  These alleged actions are therefore sufficient to satisfy the "purposeful availment" component of the *Mohasco* test.  *See Janssen*, 270 F.3d at 332 ("[T]he actions of sending false information into Tennessee by phone and fax had foreseeable effects in Tennessee and were directed at individuals in Tennessee.  These false representations are the heart of the lawsuit — they were not merely incidental communications sent by the defendant into Tennessee.").

The second *Mohasco* component "is that the plaintiff's cause of action arise from the defendant[s'] contacts with the state." *Schneider*, 669 F.3d at 703.  This component is analyzed under a "lenient standard." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007).  "If a defendant's contacts

12

with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996).

As discussed *supra*, plaintiff's claims of fraud and negligent misrepresentation arise from the allegedly false communications sent by Aguiar and Golden to plaintiff in Ohio.  Aguiar and Golden did not merely purchase insurance from an Ohio company; rather, they allegedly directed fraudulent communications into the forum that caused injury within this forum State.  Those communications were allegedly received, read, and relied upon by plaintiff in Ohio, and they form the basis of plaintiff's fraud claims.  Accordingly, the second prong of the *Mohasco* test has been met.

Finally, *Mohasco* requires that the Court determine whether the contacts are sufficiently substantial to reasonably subject Aguiar and Golden to the personal jurisdiction of a court in Ohio. *See Janssen*, 270 F.3d at 332.  "When a court finds that a defendant has purposefully availed itself of the privilege of conducting activities within Ohio and the cause of action arose from that contact, it is presumed that the assertion of personal jurisdiction is proper." *Norcold, Inc. v. Greg Lund Prods. Ltd.*, 109 F.Supp.2d 819, 826 (S.D. Ohio 2000) (citing *Cole*, 133 F.3d at 433).  "A court must consider several factors in this context, including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the

most efficient resolution of controversies.'"  *Id.* (quoting *Am.*
*Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169–70 (6th Cir. 1988)).

Although this case is not, of course, pending in an Ohio state
court, "the existence of federal avenues for relief in Ohio still
serves Ohio's interest in protecting its residents' legal options."
*Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (citing *Burger*
*King*, 471 U.S. at 478) (noting that the forum state had "manifest
interest" in providing a forum for its residents); *McGee v. Int'l Life*
*Ins. Co.*, 355 U.S. 220, 223 (1957) ("It cannot be denied that
California has a manifest interest in providing effective means of
redress for its residents when their insurers refuse to pay
claims.")).  Although it is undoubtedly burdensome for defendants
Aguiar and Golden to defend this case in Ohio, "'when minimum contacts
have been established, often the interests of the plaintiff and the
forum in the exercise of jurisdiction will justify even the serious
burdens placed on the alien defendant.'"  *Id.* at 419–20 (quoting *Asahi*
*Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987)).
Thus, the Court concludes that it is reasonable to require that
defendants Aguiar and Golden defend themselves in this Court.

Accordingly, and after viewing the pleadings and affidavits on
file in the light most favorable to plaintiff, the Court concludes
that plaintiff has met its relatively slight burden of establishing a
*prima facie* showing of personal jurisdiction over defendants Aguiar
and Golden.

B.    **Defendant Railey**

Plaintiff contends that defendant Railey is subject to personal jurisdiction in Ohio because he assisted in the submission of fraudulent information on the application and Insurance Supplement to plaintiff in Ohio.  Doc. No. 18, p. 17.  However, the Court concludes that plaintiff has failed to allege minimum contacts with the State of Ohio sufficient for the proper exercise of personal jurisdiction over defendant Railey.

A careful review of the *Complaint* reveals relatively few allegations related to defendant Railey.  The *Complaint* alleges that Railey was a participant in the STOLI scheme and "a certified accountant who was involved in verifying Barry's financial net worth to Nationwide." *Complaint*, ¶¶ 6, 24.  After Aguiar submitted an application for life insurance and Golden and Barry submitted a Life Financial Supplement to plaintiff, it is alleged that Railey "corresponded with Nationwide's underwriters and agents in [Ohio] in order to provide the remaining documents necessary for Nationwide to issue the Policy." *Id*. at ¶ 43.  It is also alleged that, on June 10, 2009, Railey, "in connection with a pre-policy issuance interview, . . . verified Barry's income and net worth as listed on the Financial Supplement." *Id*. at ¶ 46.

Notably absent from the *Complaint* are allegations that Railey purposefully took action to avail himself of the privilege of acting in Ohio or causing a consequence in Ohio.[1]  Unlike the allegations

---

[1] Railey or the STOLI Promoters, a term defined by plaintiff to include Railey, are also mentioned in paragraphs 27, 44-45, 64, 69, 81-85, 97-99, 105-09, and 112 of the *Complaint*.  These allegations, however, fail to set forth with any

against Aguiar and Golden, it is not alleged that Railey purposefully sent knowingly false communications to plaintiff in Ohio.  Although it is alleged that Railey "corresponded" with Nationwide and that he "verified Barry's income" "in connection with a pre-policy issuance interview," it is not clear from these allegations that Railey initiated the correspondence or the pre-policy issuance interview or that he took any action to purposefully avail himself of the privilege of acting in Ohio or causing a tortious injury in Ohio.

Personal jurisdiction may be premised on communications sent into the forum where those communications form the basis for the action. *Schneider*, 669 F.3d at 701-02 (quoting *Henderson*, 428 F.3d at 616). The *Complaint* does not allege, however, that Railey directed any communication into the forum, let alone communication that forms the bases for the action.  Although plaintiff argues that Railey was involved with the STOLI scheme, plaintiff has not alleged facts sufficient to establish Railey's purposeful availment or to establish that its claims arise from Railey's contacts with Ohio.  Without such allegations, this Court may not exercise personal jurisdiction over Railey.  *See LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989) ("[The] failure to meet any one of the three [*Mohasco* prongs] means that personal jurisdiction may not be invoked.").

Accordingly, the *Complaint* does not allege minimum contacts with the State of Ohio sufficient to permit this Court to exercise personal jurisdiction over defendant Railey.

---

particularity whether, or how, Railey directed his activities to residents of the State of Ohio, such that he should reasonably anticipate being haled into an Ohio court.

C.    **Defendant FJ Smith**

Plaintiff has also failed to allege sufficient minimum contacts with the State of Ohio for the proper exercise of personal jurisdiction over FJ Smith.  The *Complaint* alleges that FJ Smith's contacts with the State of Ohio consisted of the following:[2]

On "June 24, 2011, Golden and Jeff Keller, for FJ Smith, signed an Application for Designation of Owner transferring ownership of the Policy from Golden to Keller, as President of FJ Smith." *Complaint*, ¶ 56.  Golden and Jeff Keller also "signed an Application of Change of Beneficiary Designation designating FJ Smith, Inc., as primary beneficiary" of the Policy.  *Id*.

On September 12 and December 5, 2011, "FJ Smith Inc., submitted premium checks to Nationwide in its Columbus, Ohio office."  *Id*. at ¶ 58.  After Barry died in October 2011, "FJ Smith, Inc., submitted the death claim to Nationwide in its Columbus, Ohio office."  *Id*. at ¶¶ 59-60.

"The [United States] Supreme Court has spoken with respect to the significance of a contractual relationship between an in-state plaintiff and an out-of-state defendant.  The Court has held that a contract with an out-of-state party, standing alone, is not sufficient to establish minimum contacts." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1118 (6th Cir. 1994) (citing *Burger King*, 471 U.S. at 478).  "Instead, to determine whether a party purposefully

---

[2] FJ Smith or the STOLI Promoters, a term defined by plaintiff to include FJ Smith, are also mentioned in paragraphs 5, 66, 69, 97-99, 105-09, and 112 of the *Complaint*.  These allegations, however, fail to set forth with any particularity whether, or how, FJ Smith directed activities to residents of the State of Ohio, such that it should reasonably anticipate being haled into an Ohio court.

availed itself of a forum[,] a court must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'"  *Id.* (quoting *Burger King*, 471 U.S. at 479).

In the case presently before the Court, there were apparently no negotiations between FJ Smith and plaintiff prior to Jeff Keller and Golden signing the Application of Change of Beneficiary Designation and transferring ownership of the Policy to FJ Smith.  Arguably, FJ Smith had a minimal course of dealing with plaintiff in Ohio:  FJ Smith signed an Application for Designation of Owner and an Application of Change of Beneficiary Designation, it submitted two premium checks to plaintiff in Ohio, and it submitted a death claim to plaintiff in Ohio.  *Complaint*, ¶¶ 58-60.  However, the Policy, in connection with which FJ Smith was not an originating party, required that communications and payment requests be sent to plaintiff in Ohio.  *See* Doc. No. 13-5, pp. 2, 7 ("All elections, payment requests, claims, instructions, and/or communications to [Nationwide] must be sent to [Nationwide's] Home Office" in Ohio.).  The fact that plaintiff found it convenient to require payment and communications to be sent to it in Ohio is not, in this Court's opinion, of controlling significance.  *See Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 433 (6th Cir. 2006); *Mahler v. Startari*, 142 F. App'x 839, 842 (6th Cir. 2005); *Calphalon Corp.*, 228 F.3d at 722-23; *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 395 (6th Cir. 1997) ("[T]he only reason the communications . . . were directed to Michigan was that . . . [the plaintiff] found it convenient to be present

there. . . .  [The defendant] was not attempting to exploit any market
for its products in Michigan, and the company presumably would have
been pleased to communicate with . . . [the plaintiff] wherever the
latter wished. . . .  From the perspective of . . . [the defendant],
it was purely fortuitous that . . . [the plaintiff] happened to have a
Michigan address.).  Moreover, sending payment through the mail to
Ohio is a "secondary or ancillary" factor that "cannot alone provide
the minimum contacts required by due process."  See *Reynolds*, 23 F.3d
at 1119 (citations and quotations omitted).

Even if FJ Smith purposefully availed itself of acting in Ohio or
causing consequences in this state, the proper exercise of personal
jurisdiction requires that the claims asserted against this defendant
have arisen out of those activities.  *See id.*  Plaintiff's claims did
not, however, arise from FJ Smith's attenuated contacts with Ohio.

Accordingly, the *Complaint* does not allege minimum contacts
sufficient for the exercise of personal jurisdiction over FJ Smith.

## III. Venue

The moving defendants also challenge venue in this District and
Rule 12(b)(3) of the Federal Rules of Civil Procedure authorizes a
motion to dismiss on this basis. Plaintiff contends that venue is
proper in this District pursuant to 28 U.S.C. § 1391, which provides
in pertinent part as follows:

(b) Venue in general.--A civil action may be brought in--

(1) a judicial district in which any defendant resides, if
all defendants are residents of the State in which the
district is located;

(2) a judicial district in which a substantial part of the
events or omissions giving rise to the claim occurred, or a

> substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

The moving defendants argue that venue is improper under § 1391 because (1) no defendant resides in Ohio; (2) a substantial part of the alleged events giving rise to plaintiff's claims occurred in California, not in Ohio; and (3) the action could have been brought in California. *See* Doc. No. 13, pp. 26-28; Doc. No. 15, pp. 9-11. Plaintiff takes the position that venue is proper under § 1391(b)(2) because a substantial part of the events giving rise to its claims occurred in this District. Doc. No. 18, pp. 26-28; Doc. No. 19, p. 25.

It is alleged that plaintiff received and reviewed the Policy application and related materials in the Southern District of Ohio. These activities have a substantial connection to plaintiff's claim that the Policy is void *ab initio* because of material misrepresentations in those application materials. This Court therefore concludes that venue in the Southern District of Ohio is not improper. *See Aviva Life & Annuity Co. v. Goldstein*, 722 F.Supp.2d 1067, 1077 (S.D. Iowa 2010).

## IV.   Transfer of Venue

The moving defendants contend that, regardless of the propriety of venue in this district, the action should be transferred to the Southern District of California, which is a more convenient forum, pursuant to 28 U.S.C. §§ 1404 and 1406.  Doc. No. 13, pp. 28-29; Doc.

20

No. 15, pp. 14-18.  Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Section 1406(a) does not require that the Court be vested with personal jurisdiction over a defendant before transferring the case.  *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993).  Accordingly, this Court may transfer this entire action, notwithstanding the lack of personal jurisdiction over defendants Railey and FJ Smith, if it is in the interest of justice to do so.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Courts interpreting § 1404(a) must engage in a two-step analysis and determine: (1) whether the action might have been brought in the proposed transferee court; and (2) whether considering all relevant factors, the balance of convenience and the interest of justice "strongly" favor transfer.  *Kay v. Nat'l City Mortg. Co.*, 494 F.Supp.2d 845, 849-50 (S.D. Ohio 2007).  Ultimately, the decision whether to transfer venue is committed to the sound discretion of the trial court.  *Midwest Motor Supply Co. Inc. v. Kimball*, 761 F.Supp. 1316, 1318 (S.D. Ohio 1991).

"An action 'might have been brought' in a transferee court if: (1) the court has jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to

process issuing out of the transferee court." *Sky Techs. Partners, LLC v. Midwest Research Institute*, 125 F.Supp.2d 286, 291 (S.D. Ohio 2000) (citations and punctuation omitted).  It is not disputed that plaintiff could have brought this action in the Southern District of California.  Subject matter jurisdiction would be proper under 28 U.S.C. § 1332; personal jurisdiction and venue would be proper because Golden, FJ Smith, and Railey are citizens of California[3] and all of the alleged communications and activity by the moving defendants originated in California.

Once it is determined that the case "could have been brought" in the transferee court, "a district court should consider the private interests of the parties, including witnesses, as well as other public interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F.Supp.2d 1039, 1049 (S.D. Ohio 2002) (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)).  "Although there is no definitive list of factors that must be considered in determining whether a change of venue is warranted, [a] district court may consider a number of case-specific factors." *Id*.  Private interest factors include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

---

[3] In fact, service of process was effected on Golden, Railey, and FJ Smith in the Southern District of California.  *See* Doc. No. 5, pp. 1-2; Doc. No. 6, p. 1.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  Public interest factors include docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law.  *Id*.

The moving defendants argue that the Southern District of California would be a more convenient forum because it will be burdensome to litigate the case in Ohio.  Plaintiff argues that its choice of forum is entitled to deference and to transfer the case will merely transfer the inconvenience from one party to another.  Doc. No. 18, pp. 30-31.

Plaintiff's choice to litigate in its home state of Ohio is generally entitled to substantial deference.  *See Jamhour v. Scottsdale Ins. Co.*, 211 F.Supp.2d 941, 946 (S.D. Ohio 2002).  A plaintiff's choice of forum is entitled to less deference, however, when the chosen forum "has no connection with the matter in controversy," *St. Joseph Solutions, LLC v. Microtek Medal, Inc.*, No. 1:11-cv-388, 2011 WL 5914010, at *7 (S.D. Ohio Nov. 28, 2011) (citations omitted), or when "the vast majority of operative facts giving rise to the lawsuit took place" in a forum other than that chosen by the plaintiff.  *U.S. ex rel. Kairos Scientia, Inc. v. Zinsser Co.*, No. 5:10-cv-383, 2011 WL 127852, at *2-3 (N.D. Ohio Jan. 14, 2011). Although the moving defendants argue that the only nexus with Ohio is plaintiff's domicile here, *see* Doc. No. 28, p. 7, Doc. No. 29, p. 21, this is not, in the view of this Court, a case in which the forum state has no meaningful ties to the events giving rise to

23

the claims asserted herein.  Aguiar and Golden allegedly directed fraudulent communications to plaintiff in Ohio, where and plaintiff's home office is located.  Accordingly, plaintiff's choice of forum is therefore entitled to "substantial consideration."  *See St. Joseph Solutions, LLC*, 2011 WL 5914010 at *7 (quoting *Steelcase Inc. v. Smart Techs., Inc.*, 336 F.Supp.2d 714, 720 (W.D. Mich. 2004)).

Nevertheless, "the location of the events giving rise to the dispute is [a] factor considered in ruling on [a] § 1404(a) motion to transfer."  *Id*. at 6 (citing *Centerville ALF, Inc.*, 197 F.Supp.2d at 1049).  The *Complaint* alleges that most, if not all, of the operative facts giving rise to this action occurred in California and were then directed to Ohio.  This fact weighs against the deference in favor of plaintiff's choice of forum and in favor of transfer.

With regard to the convenience of the parties, there is no doubt that the transfer of this case to the Southern District of California would be most convenient for defendants Golden and Railey.  These defendants, according to their declarations, are citizens of California[4] who have no connection with Ohio apart from their defense against the claims asserted against them in this action. *Railey Declaration*, ¶¶ 2, 4; *Golden Declaration*, ¶¶ 2, 4.  Similarly, FJ Smith is a corporation organized under the laws of the State of California with its principal place of business in California.  *Keller Declaration*, ¶ 2.  It is not licensed or registered to do business in

---

[4] "The residence of the parties is another factor relevant to a motion to transfer." *St. Joseph Solutions, LLC*, 2011 WL 5914010 at *7 (citing *Centerville ALF, Inc.*, 197 F.Supp.2d at 1049).

Ohio, has never done business in Ohio, has never solicited clients or advertised in Ohio, and does not own any property, have a bank account, regularly sell or purchase goods in, solicit clients from, or have any assets in Ohio. *Id.* at ¶ 4. FJ Smith does not maintain offices, employees, agents, officers, or directors in Ohio. *Id.* On the other hand, litigation of this action in this Court would be most convenient for plaintiff, as it is an Ohio corporation with its principal place of business in Franklin County, Ohio. *Complaint*, ¶ 2. Defendant Aguiar is a Texas resident, *Aguiar Declaration*, ¶ 1, and would presumably be inconvenienced regardless of whether this action is litigated in Ohio or California. However, defendants have provided uncontroverted evidence that plaintiff is registered to do business in California, is licensed with the California Department of Insurance, and has more than 200 associates in 44 cities in California. *See* Doc. Nos. 12, 27; Doc. No. 29, Exhibits 3-7. Accordingly, it appears to the Court that the transfer of this case to the Southern District of California would not greatly inconvenience plaintiff. When this consideration is weighed against the inconvenience to defendants caused by having to litigate in Ohio, the balance tips in favor of transfer.

The convenience of the witnesses, which is often considered the most important factor, *see Kay*, 494 F.Supp.2d at 852, also weighs in favor of transfer. Plaintiff's central assertion in this case is that material misrepresentations were made in the application (and related materials) for the Policy and that there was no insurable interest at the time the policy was issued. *See Complaint*, ¶¶ 31-46, 69-70, 73,

79-81, 91.  The moving defendants maintain that the relevant witnesses and documents are located in California because that is "where the application, creation of trust documents, estate planning, medical exam of the insured and other formative actions occurred."  Doc. No. 13, p. 29.  *See also* Doc. No. 15, p. 16.  Presumably most if not all non-party witnesses, including Railey and Jeff Keller, would be located in California. Although defendants have not identified these witnesses, nor have they explained the importance of their anticipated testimony, to require Railey, Jeff Keller, and other witnesses who reside in California to travel to Ohio from California would place a significant burden on those witnesses and the party who intends to offer their testimony.  Furthermore, since these witnesses reside more than 100 miles from any location in Ohio, this Court cannot compel their attendance at a trial in this District.  *See* Fed. R. Civ. P. 45(b)(2)(B).  Although plaintiff asserts that it "has company witnesses and information associated with the underwriting and issuance of the Policy, all located in Ohio," Doc. No. 18, p. 30, it too has not identified any of these witnesses, nor has it explained the importance of their anticipated testimony.  It is also more likely that plaintiff can assure the appearance of its own employees at a trial in California than can the individual defendants assure the appearance of their witnesses at a trial in Ohio.  *See Goldstein*, 722 F.Supp.2d at 1078.  Furthermore, plaintiff is a large insurance corporation which can likely afford to travel to California to obtain redress.  *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 796-97 (6th Cir. 1996) ("[I]nternational insurance

companies like Nationwide can afford to travel to a defendant corporation's home state or country in order to recover if the situation so requires.  Nationwide is a large insurance corporation dealing at arms-length world-wide with other similar insurance corporations, and there is no threat here that Nationwide will not be able to afford to travel to the defendant's jurisdiction to obtain redress, and Nationwide does not claim otherwise.").  On balance, the convenience of the witnesses weighs heavily toward transfer.

The public interest factors also weigh in favor of transfer, although the factors of familiarity with controlling law and state interest are in equipoise.  Defendant Aguiar concedes that plaintiff's contract claim against him is governed by Ohio law, *see* Doc. No. 15, p. 17; the parties otherwise disagree as to what law applies in this action.  The Policy's choice of law provision specifies that California law applies.  *See* Doc. No. 13-4, p. 3; Doc. No. 13-5, p. 5. Plaintiff, however, takes the position that the Policy and its terms are  void *ab initio*.  Doc. No. 18, pp. 33-35.  Without deciding what law applies in this case, the Court concludes that this consideration favors neither position.

The State of Ohio has an interest in providing an effective means of redress for its residents, as does the State of California.  Both states also have an interest in regulating the activities of insurance companies that do business within their state.  *Cf. McGee*, 355 U.S. at 223 ("It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims.").

Despite this apparent state of equipoise, consideration of judicial economy weighs in favor of transfer. As discussed *supra*, this Court lacks personal jurisdiction over Railey and FJ Smith. All defendants may, however, be joined in a single action in California. The transfer of this action will avoid duplicative claims and will "reduce the prospect of inconsistent adjudications and the cost of presenting the same evidence in multiple forums." *See Stewart v. Chesapeake Exploration, LLC*, No. 2:12-CV-270, 2012 WL 3151255, at *4 (S.D. Ohio Aug. 2, 2012) (citing *Ltd. Serv. Corp. v. M/V APL PERU*, No. 2:09-cv-1025, 2010 WL 2105362, at *6 (S.D. Ohio May 25, 2010).

For the convenience of the parties and witness and in the interest of judicial economy, the Court therefore concludes that the applicable factors under § 1404(a) strongly favor transfer of this case. The Court also concludes that, as to Railey and FJ Smith and pursuant to § 1406(a), it would be in the interest of justice to transfer this case to the United States District Court for the Southern District of California.

## V.  12(b)(6) Motion to Dismiss

The moving defendants also contend that plaintiff has failed to state a claim upon which relief can be granted. In light of the foregoing, it is recommended that the motions to dismiss in this regard be denied without prejudice to renewal in the transferee District. It would be improvident, in this Court's view, to consider the sufficiency of the claims in light of the fact that this Court lacks personal jurisdiction over Railey and FJ Smith.

**WHEREUPON**, defendants' requests that the Court to take judicial notice, Doc. Nos. 12, 27, are **GRANTED** as unopposed.  It is **RECOMMENDED** that the motions to dismiss, Doc. Nos. 13 and 14, be **DENIED**. Furthermore, it is **RECOMMENDED** that this action be transferred, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), to the United States District Court for the Southern District of California.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

January 7, 2013                           *s/Norah McCann King*
                                          Norah M^cCann King
                                    United States Magistrate Judge